IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | | |
|---|---|---|
| INTERSTATE POWER AND LIGHT COMPANY, | | |
| Plaintiff, | | No. C10-0034 |
| vs. | | RULING ON MOTION TO AMEND THE ANSWER |
| SUNOPTA INGREDIENTS, INC., | | |
| Defendant. | | |

_____

This matter comes before the Court on the Motion to Amend the Answer (docket number 17) filed by the Defendant on April 15, 2011, and the Resistance (docket number 22) filed by the Plaintiff on May 2, 2011. The movant's request for telephonic hearing is denied. The issue will be decided without oral argument, pursuant to Local Rule 7.c.

## *PROCEDURAL HISTORY*

On February 12, 2010, Plaintiff Interstate Power and Light Company ("IPL") filed a petition at law in the Iowa District Court for Linn County, seeking damages for breach of contract from Defendant SunOpta Ingredients, Inc. The action was removed to this Court on March 8, 2010. On March 22, 2010, SunOpta filed its answer, including nine affirmative defenses.

On April 12, 2010, the Court adopted a proposed Scheduling Order and Discovery Plan submitted by the parties. Among other things, the parties agreed to a June 15, 2010 deadline for amending the pleadings. The Order also established deadlines for disclosure of expert witnesses, completion of discovery, and filing dispositive motions. The trial ready date was identified as May 15, 2011.

On November 11, 2010, the parties jointly filed a motion to extend certain pretrial deadlines, citing "delays in the gathering and production of information in this case." The Court granted the motion, extending the deadlines for completion of discovery and filing dispositive motions by approximately 60 days. The trial ready date was pushed back to July 15, 2011.

On January 10, 2011, the parties again asked that the pretrial deadlines be extended. The parties asserted that their attempts to complete the depositions prior to the discovery deadline "failed due to both attorney and witness scheduling conflicts." Once again, the Court granted the motion and extended the deadlines. The Order further provided, however, that no further extensions would be granted.

On April 15, 2011, SunOpta filed the instant motion to amend its answer. SunOpta asks that it be permitted to add an additional affirmative defense and two counterclaims. IPL resists, arguing that the motion is untimely and, in any event, the proposed amendments are futile.

### RELEVANT FACTS

According to the pleadings, IPL is an Iowa corporation with its principal place of business in Cedar Rapids, Iowa. SunOpta is a Delaware corporation doing business in Iowa. On July 1, 2005, IPL and SunOpta entered into a Process Steam Services Agreement, in which IPL agreed to supply SunOpta with steam. IPL claims that its Sixth Street Generating Station, which was used to provide steam to SunOpta, was severely damaged in flooding on June 12, 2008, and was no longer capable of generating steam. In its answer, SunOpta asserts that it "lacks sufficient knowledge or information upon which to form a belief as to the truth or falsity" of that allegation.

IPL claims that it notified SunOpta on June 12, 2008, that it was "declaring a force majeure event pursuant to the 2005 Agreement." SunOpta asserts that it lacks sufficient evidence to admit or deny the allegation. On July 3, 2008, IPL wrote to SunOpta and confirmed that "until further notice, IPL is unable to provide steam service from the coal-

fired boilers at the Sixth Street Generating Station." The letter also describes IPL's efforts to provide temporary steam service.

> We are mitigating the extent of the Force Majeure through the rental of package boilers and other equipment, which would be available to provide temporary steam service to SunOpta on or after July 7, 2008. If SunOpta would like to have temporary steam service, a start-up standard operating procedure will be provided shortly. A letter agreement with new pricing for this temporary steam service will also need to be signed by IPL and SunOpta prior to the commencement of such service.

*See* July 3, 2008 Letter from IPL to SunOpta (docket number 2 at 8-9). In its answer, SunOpta admits receiving the July 3, 2008 letter, and states that "the letter speaks for itself."

IPL claims that SunOpta subsequently advised IPL that it was interested in receiving steam service from IPL's temporary system. In its answer, SunOpta denies the allegation "generally." According to IPL, it submitted a proposed letter agreement to SunOpta, dated July 15, 2008. In paragraph 9 of its petition, IPL asserts that "SunOpta, through its authorized representative, executed the Letter Agreement on July 16, 2008."[1] While page 2 of the letter appears to bear the signature of the plant manager for SunOpta, dated 7/16/08, in its answer "SunOpta denies the allegations contained in paragraph 9 of Plaintiff's Complaint and affirmatively alleges that the July 15, 2008 letter speaks for itself."[2] (However, in its proposed counterclaim found in the amended answer, SunOpta asserts that "[o]n July 15, 2008, SunOpta and IPL signed the Letter Agreement on Temporary Steam Costs (the "Letter Agreement"), pursuant to which SunOpta would purchase steam from the temporary system."[3])

---

[1] *See* Petition at Law (docket number 2), ¶ 9 at 2.

[2] *See* SunOpta's Answer (docket number 4), ¶ 9 at 2.

[3] *See* SunOpta's proposed Amended Answer (docket number 17-1), ¶ 32 at 10.

IPL claims that it then delivered steam to SunOpta pursuant to the letter agreement. According to IPL, it issued regular monthly invoices to SunOpta starting July 31, 2008. SunOpta asserts in its answer that it "lacks sufficient evidence to admit or deny whether it started receiving monthly invoices for the temporary steam system starting on July 31, 2008 and therefore denies the same generally and puts Plaintiff to its burden of proof." The letter agreement provided that SunOpta would pay "demand costs" associated with the boilers and equipment needed to supply the steam, and "commodity costs" associated generally with operating, maintenance, and related expenses. Initially, IPL apparently intended to amortize its "demand costs" over 10 months, but later agreed to amortize those costs over 18 months, thereby reducing the monthly charges to its customers. In December 2008, after determining that the charges for the "commodity costs" did not cover the actual costs of operating the system, IPL "back-billed" its customers, including SunOpta. IPL asserts that SunOpta paid the back-billed amount. Again, SunOpta states that it "lacks sufficient information to admit or deny" those allegations.

On April 2, 2009, SunOpta advised IPL that it had installed its own steam supply system and would no longer purchase steam from IPL. IPL claims that SunOpta still owes $154,729, plus interest, representing its portion of the "demand costs" associated with establishing the temporary steam system.

IPL brought this action on February 12, 2010. Significantly, for purposes of the instant motion, IPL asserted in its petition that it was necessary to use four boilers for the temporary steam system, rather than two, as indicated in the letter agreement. According to the petition:

> In August 2008, IPL determined that it would be necessary to utilize four package boilers for the temporary steam system rather than two (as referenced in the Letter Agreement) due to the increased demands expected during the upcoming winter heating season. IPL notified SunOpta of this change and SunOpta did not object.

*See* IPL's Petition at Law (docket number 2), ¶ 14 at 3. That is, SunOpta knew not later than the filing of the instant action that the temporary steam system constructed by IPL utilized four boilers.

In its answer, SunOpta generally denies IPL's allegations. In addition, it asserts nine affirmative defenses, including laches/estoppel/waiver, accord and satisfaction, breach of implied covenant, failure to state a claim, statute of frauds, usurious interest rate, estoppel, failure of consideration, and payment. In its instant motion, SunOpta asks permission to add an additional affirmative defense of "economic duress/business compulsion."

SunOpta also seeks permission to assert two counterclaims. In its proposed counterclaims, SunOpta asserts that it purchased steam from IPL until April 2009. From July 1, 2005 until June 12, 2008, the steam was purchased pursuant to a Process Steam Service Agreement. On July 15, 2008, SunOpta and IPL signed the letter agreement, attached to the petition as Exhibit A, "pursuant to which SunOpta would purchase steam from the temporary system." SunOpta notes that the letter agreement refers specifically to "the rental costs of two package boilers and other equipment associated with the supply of steam and the one-time set-up costs of such equipment amortized over 10 months." SunOpta concedes in its proposed counterclaims that it agreed to pay its "portion" of those costs. Rather than renting two 75,000 pound boilers, however, IPL also rented a 150,000 pound boiler and purchased a 250,000 pound boiler. SunOpta asserts that it is entitled to recover those amounts which it paid for the two additional boilers, as a consequence of IPL's breach of a duty of good faith and fair dealing in setting the price charged by SunOpta (proposed Count I) and IPL's breach of a duty of good faith and fair dealing in modifying the contract (proposed Count II).

## DISCUSSION

Initially, the Court must determine whether SunOpta's motion for leave to amend was timely filed. The Court previously set a deadline for amending the pleadings,

pursuant to an agreement of the parties, of June 15, 2010. The instant motion was filed on April 15, 2011, precisely ten months later. In its brief, SunOpta acknowledges that a party seeking to add a late-filed amendment must establish "good cause" for doing so. That is, deadlines established in a scheduling order may be modified only for good cause. FED. R. CIV. P. 16(b)(4). *See also Popoalii v. Correctional Medical Services*, 512 F.3d 488, 497 (8th Cir. 2008) ("If a party files for leave to amend outside of the court's scheduling order, the party must show good cause to modify the schedule."). The more liberal standard for amendments found in Rule 15(a)(2) is not applicable. *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008) ("Rule 16(b)'s good-cause standard governs when a party seeks leave to amend a pleading outside of the time period established by a scheduling order, not the more liberal standard of rule 15(a).").

Here, SunOpta claims that good cause exists for permitting the late-filed amendments because it only recently learned of the facts giving rise to the affirmative defense and its proposed counterclaims. According to its brief:

> SunOpta did not learn of the facts giving rise to the affirmative defense of economic duress and the counterclaims for breach of the duty of good faith and fair dealing until it learned in the depositions of Sean Maxwell and Jason Nielsen that SunOpta was being charged a portion of the cost of a 150,000 and a 250,000 pound boiler, costs that SunOpta was not obligated to pay in the Letter Agreement.

*See* SunOpta's Memorandum of Law (docket number 17-2) at 3. Similarly, in her declaration filed in support of the instant motion, attorney Emily L. Grande states that SunOpta "learned for the first time" in the depositions of Jason Nielsen and Sean Maxwell that it had been charged for the cost of four steam boilers. Ms. Grande acknowledges that IPL had produced "complicated spread sheets" regarding these costs, but asserted that it was not until Jason Nielsen "explained their meaning" that "it was clear" that SunOpta had been charged for a portion of the two additional boilers.

6

As noted above, however, IPL's petition – filed more than one year earlier – alleged that it had determined in August 2008 "that it would be necessary to utilize four package boilers for the temporary steam system rather than two (as referenced in the Letter Agreement)." The petition further alleges that "IPL notified SunOpta of this change and SunOpta did not object." Accordingly, SunOpta knew or should have known from the outset of this lawsuit that the charges submitted by IPL included the cost of installing four boilers, rather than two. The Court believes that it is disingenuous of SunOpta to claim that it "learned for the first time" at the depositions more than a year later that it had been charged for a portion of the cost of four steam boilers. At the least, SunOpta was placed on notice when the lawsuit was filed that IPL had likely charged them for a portion of the two additional boilers. *If* SunOpta only confirmed that fact more than one year later, it was because of its own lack of diligence. This lack of diligence precludes a finding that good cause exists for permitting the late-filed counterclaims. *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006) ("The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements.").

Similarly, the facts associated with SunOpta's proposed affirmative defense were known, or should have been known, to SunOpta when it filed its answer. SunOpta asserts that it "involuntarily accepted price increases made by IPL for the cost of steam in December 2008." According to SunOpta, it "had no other alternative but to accept the price increases because it had no other ready source of steam." These alleged facts were not discovered by SunOpta during the course of these proceedings. SunOpta has not established why the affirmative defense could not have been asserted prior to the pleadings deadline. *Transamerica Life Ins. Co. v. Lincoln Nat. Life Ins. Co.*, 590 F. Supp. 2d 1093, 1100 (N.D. Iowa 2008) ("In short, 'good cause' for a belated amendment under Rule 16(b) requires a showing that, despite the diligence of the movant, the belated amendment could not reasonably have been offered sooner.").

The Court concludes that SunOpta has failed to show good cause for filing its motion for leave to amend at this late stage of the case. Accordingly, the motion will be denied. The court finds it unnecessary to consider IPL's additional arguments that the proposed amendments would be futile.

### ORDER

IT IS THEREFORE ORDERED that SunOpta's Motion to Amend the Answer (docket number 17) is **DENIED**.

DATED this _10th_ day of May, 2011.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA